POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

In re                                    ) Case No. 24-11015-B-11
                                         )
**PINNACLE FOODS OF CALIFORNIA LLC,**)   Docket Control No. MB-1
                                         )
                      Debtor.            )
                                         )
_____  )
                                         )
In re                                    ) Case No. 24-11016-B-11
                                         )
**TYCO GROUP, LLC,**                     )   Docket Control No. MB-1
                                         )
                      Debtor.            )
                                         )
_____  )
                                         )
In re                                    ) Case No. 24-11017-B-11
                                         )
**CALIFORNIA QSR MANAGEMENT, INC.,** )   Docket Control No. MB-1
                                         )
                      Debtor.            )
                                         )
_____  )

**RULING ON POPEYES LOUISIANA KITCHEN'S
MOTION TO REMOVE DEBTOR-IN-POSSESSION;
EXPAND SUB V TRUSTEE'S POWERS; AND FOR OTHER RELIEF**

_____

Hagop T. Bedoyan, Garrett R. Leatham, Garrett J. Wade, McCORMICK, BARSTOW SHEPPARD, WAYTE & CARRUTH, Fresno, CA, and Paul J. Battista, Glenn D. Moses, VENABLE, LLP, for Popeyes Louisiana Kitchen, Inc., Movant.

Michael J. Berger, Law Offices of Michael J. Berger, Beverly Hills, CA, Pinnacle Foods of California, LLC, Tyco Group, LLC, CA QSR Management, Inc., Keith C. Owens, Craig R. Tractenberg, FOX ROTHSCHILD LLP, for Pinnacle Foods of California LLC, Debtor.

Walter R. Dahl, Subchapter V Trustee.

_____

RENÉ LASTRETO II, Bankruptcy Judge:

**INTRODUCTION**

Creditor Popeyes Louisiana Kitchen, Inc. ("Popeyes") brings this *Motion to Remove the Debtor from Possession and Expand the Powers of the Subchapter V Trustee or, in the Alternative, to Revoke the Debtor's Subchapter V Designation and Appoint a Chapter 11 Trustee ("the Motion").* Doc. #120.

Popeyes has filed identical motions in three related cases: *In re Pinnacle Foods of California ("Pinnacle"),* Case No. 24-11015, Doc. #120; *In re Tyco Group, LLC ("Tyco")*, Case No. 24-11016, Doc. #107; and *In re California QSR Management, Inc. ("CA QSR"),* Case No. 24-11017, Doc. #127. Pinnacle and Tyco (together "the Franchisee Debtors") are franchisees of Popeyes. The Franchisee Debtors and CA QSR (together "the Three Debtors" who filed "the Three Cases") have each filed one of the three related cases listed above. Popeyes' motions are substantially identical, and the respective debtor in each case filed a *Response* to the Motion each of which is, likewise, substantially the same.

11 U.S.C. § 1185(a) permits a party-in-interest to ask the court to remove the debtor-in-possession in a Sub V Chapter 11 case "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor." Popeyes here contends the Debtors' reorganization plans require assumption and assignment of franchise agreements and Popeyes' consent is legally required but not forthcoming. This amounts, says Popeyes, to "gross mismanagement" of the affairs of the Debtors and supports removal of the Debtors as debtors-in-possession. Debtors' legal position differs. The court is not persuaded that asserting Debtors' position is "gross mismanagement." The court DENIES the motion.

## BACKGROUND

The facts outlined here are drawn from the moving papers and, except where noted, are not disputed by the Debtors. *See Pinnacle* Docs. #120, ##122-24, #171; *Tyco* Docs. ##142-148; and *CA OSR* Docs. ##161-165.

Popeyes is the franchisor of the two Franchisee Debtors who each opened Popeyes® brand fast food restaurants pursuant a franchise agreement (the "Franchise Agreement"). Under the Franchise Agreements, Pinnacle is the franchisee for five Popeyes restaurants in Fresno, California, and one in Turlock, California, while Tyco is the franchisee for one restaurant in San Diego, California.

Popeyes claims it had no prior knowledge that a separate entity, CA QSR, was created and put in place as the operating entity for the Franchisee's restaurants. This was in contravention of Section 10.12 of the Franchise Agreements which, *inter alia*, forbade the operation of any of the Popeyes restaurants by any party other than Franchisee without Franchisor's prior written consent and identified any violation of that provision as a "material default of this Agreement, for which Franchisor may terminate the Agreement."

Popeyes asserts that it did not become aware of this breach or, indeed, CA QSR's existence until the filing of the petition. The Debtors dispute this and claim that Popeyes knew or should have known about CA QSR's role in the operation of the restaurants since 2019, but Popeyes never issued any default notice regarding the use of CA QSR as a management entity. (*See ///*

Pinnacle Docs. ##171-173; Tyco Docs. ##142-148; and CA OSR Docs. ##161-165

The Three Debtors each filed bankruptcy under Chapter 11, Subchapter V on April 22, 2024. Doc. #1. The Three Debtors each filed a Chapter 11 Small Business Plan in their respective cases on August 2, 2024. Doc. #177. *See also* Tyco at Doc. #149 *and* CA QSR at Docs. #166, #172. Popeyes filed this motion and identical motions in each of the Three Cases on July 10, 2024. The Three Debtors timely filed responses in their respective cases, and Popeyes duly filed replies.

## JURISDICTION

Jurisdiction is founded on 28 U.S.C § 1334(a) and (b) and by the District Court's reference under 28 U.S.C. § 157(a). This is a core proceeding which the bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(1),(2),(A),(O). Findings of fact should be construed as conclusions of law and conclusions of law shall be construed as findings of fact as appropriate. Rule 7052.

Neither party objects to the court's resolution of any disputed material factual issues on this record since neither filed a separate statement identifying each disputed factual issue as required under LBR 9014(f)(1)(B),(C).

///
///
///
///
///

4

## <u>ANALYSIS</u>

### I.

As a threshold matter, it is important to note some of the distinctions between a petition brought under Chapter 11 Subchapter V and one simply brought under Chapter 11.

> Certain small business debtors may elect to reorganize under subchapter V of chapter 11, a proceeding intended to be simpler and less expensive than a traditional chapter 11. This subchapter "provides a streamed-down procedure that allows the self-employed to hold on to their small businesses." Only the debtor may file a plan of reorganization, and because § 1104 does not apply in a case filed under subchapter V, the Court may not appoint a trustee or an examiner. Section 1185 permits a court to remove the debtor from possession on a showing of cause, in which case (under § 1183(b)(5)) the subchapter V trustee is empowered to operate the debtor's business. But, unlike a regular chapter 11 trustee, this action does not permit any party other than the debtor to propose a plan. And perhaps most importantly, subchapter V redefines "fair and equitable" such that a plan may be confirmed so long as it commits the debtor's projected disposable income over the applicable plan period (three or five years) to repay creditors. The requirement that a plan satisfy absolute priority as to any rejecting class of creditors, otherwise applicable in chapter 11 by virtue of §§ 1129(a)(8) and 1129(b), does not apply under subchapter V.

*In re ComedyMX, LLC*, 647 B.R. 457, 462 (Bankr. D. Del. 2022)(citations omitted).

11 U.S.C. § 1185(a) provides:

> On request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor-in-possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case, or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter.

The statutory use of "including" is not limiting. See 11 U.S.C. § 102(3). Thus, while not an exclusive list, the kind of

things that the court must look for prior to taking the extreme
step of removing a debtor in possession include:

1. fraud;
2. dishonesty;
3. incompetence; or
4. gross mismanagement.

11 U.S.C. § 1185(a). With those principles in mind, the
court turns to the instant motions.


**A.**

The focus of Popeyes' motion is the court's determination of
"cause." The court must zero in on the conduct of the DIP. This
inquiry does not include the interests of creditors, equity
shareholders, or other interests of the estate. 8 *Collier on
Bankruptcy* ¶1185.01 (16th ed. 2024). We are assisted by rulings
under § 1104 (a) regarding "cause" for appointment of a trustee
in a traditional or small business case which provide guidance
for determination of "cause" to remove a debtor from possession.
*Id.*

Further, the court looks to § 1204 which is almost identical
to § 1185. Removal of the debtor in possession is an
"extraordinary remedy." Parties seeking the appointment of a
trustee bear the burden of proving the appointment of a trustee
is justified. *Matter of Jessen*, 82 B.R. 490, 494 (Bankr. S.D.
Indiana 1988); *In re General Oil Distributors*, 42 B.R. 402, 408
(Bankr. E.D.N.Y. 1984); *In re Myers*, 1993 WL 836554 (Bankr. D.
Montana 1993) (A Chapter 12 case). Under § 1204 a court
"presumably needs to find that the debtor has engaged in some
sort of inequitable conduct." *Collier*, supra at ¶ 1204.01. A

6

court should not remove the debtor from possession lightly and should do so only when a trustee is needed immediately to preserve assets of the estate and to curb improper conduct of the debtor. *Id.*

In an unpublished decision, the Bankruptcy Court in *In re Neosho Concrete Products Co.*, 20-30314; 2021 WL 1821444 (Bankr. W.D. Mo., May 6, 2021) formulated a five factor list of things to consider when the court is asked to remove the debtor in possession in a Sub V case: (1) Materiality of any DIP misconduct; (2) The DIP's evenhandedness or lack thereof in dealing with insiders and affiliated entities in relation to other creditors; (3) Existence of pre-petition avoidable preferences or fraudulent conveyances; (4) whether any conflict of interest on the part of the DIP are interfering with its ability to fulfill its fiduciary duties; (5) Self-dealing  or squandering of assets. *Id.* at *8.

Examples of inequitable debtor conduct justifying removal of the debtor in possession in a Sub V case include:

    (a)    Deliberate failure to follow a court order, *In re Pittner*, 638 B.R. 255, 260 (Bankr. D. Mass. 2022);

    (b)    Failure to maintain insurance, failure to file needed first day motions, inability to employ qualified counsel. *Coeptis Equity Fund LLC v. Hoskins (In re Coeptis Equity Fund LLC),* NC-22-1135 (and related appeals), 2022 Bankr. LEXIS 3524 (B.A.P. 9th Cir. Dec. 12, 2022) *aff'd per curiam* 2024 U.S. App. LEXIS 6384 (9th Cir. March 18, 2024);

    (c)    Debtor's principal threatens to "demonetize" the debtor and demonstrates willingness to defy pre-petition injunctions. *In re ComedyMX, LLC*, 647 B.R. at 464-65; and

    (d)    Evidence of self-dealing by principal and incurring debt for principal's benefit resulting in an incurable conflict of interest. *In re Duling Sons, Inc.*, 650 BR 578, 581 (Bankr. D. S. D. 2023).

Popeyes' motion does not address the relevant inquiry in any significant way.  As will be seen, there is an insufficient factual basis now to remove the debtor in possession, expand the powers of the Sub V Trustee, or have the debtors forfeit the Sub V election.

**B.**

In the motion, Popeyes summarizes its basis for either removing Debtor as DIP and expanding the Subchapter V Trustee's powers or, alternatively, to revoke Debtor's Subchapter V designation succinctly in one paragraph:

Good cause exists to remove the debtor from possession and expand the powers of the subchapter V trustee because the Debtor does not have the ability to assume its franchise agreement without Creditor's consent and Creditor has made and will make it clear that it would oppose any reorganization plan where the Debtor retains ownership of its restaurants under the control of the managing member Imran Damani. The Debtor is not fulfilling its fiduciary obligations to the Subchapter V Trustee, the U.S. Trustee, its creditors or this Court.

Pinnacle Doc. #120; Tyco Doc. #107 and CA QSR Doc. #127. Notably, nothing in the preceding paragraph raises accusations of fraud, dishonesty, incompetence; or gross mismanagement, beyond Popeyes' bold assertion that the mere act of pursuing an internal reorganization rather than sale of the ongoing concern (as Popeyes would prefer) constitutes a breach of fiduciary duty. *Id.*

The Bankruptcy Code does not define "gross mismanagement" but it means more than asserting an opposing legal position that

is not frivolous. See, *e.g. In Re Congaree Triton Acquisitions, LLC*, 492 B.R. 843, 852 (Bankr. D.S.C. 2012) (Inventory loss due to theft without adequate safeguards and failing to report theft on monthly operating reports.) *In Re Vanilla Woodward, LLC*, 501 B.R. 322, 323-24 (Bankr. E.D. Mich. 2012.) (Failure to make adequate protection payments as ordered, failure to make important and required disclosures in statement of financial affairs and not promptly making corrections.) *Nester v. Gateway Access Sols. Inc., (In Re Gateway Access Sols. Inc.)* 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007)(Failure to maintain an effective corporate management.)

Nowhere in Popeyes' extensive briefing does it point to any conduct which rises to that level of malfeasance on the part of the Three Debtors or their management. Rather, Popeyes' theory is as follows:

1.  The Debtors cannot have an effective reorganization without assuming the Popeyes Franchise Agreements.

2.  Popeyes will not under any circumstances agree to a plan whereby the current Managing Member, Imran Damani, retains control of the debtors.

3.  Because of material, non-curable breaches of the Franchise Agreements by the Three Debtors, Popeyes is excused from accepting performance by Popeyes pursuant to § 365(c)(1) of the Code, and the DIP may not assume or assign the Franchise Agreements.

4.  THEREFORE, Debtors (through Imran Damani) are "pursuing a path that is destined to fail," which represents breach of Debtors' fiduciary duty to the bankruptcy estate and constitutes grounds for removal under § 1185(a).

See Pinnacle Doc. #124; Tyco Doc. #110 and CA QSR Doc. #130. It is on this last point (i.e. that Debtors are "pursuing a path that is destined to fail") that Popeyes' arguments flounder.

True, Popeyes is presently taking a hardline against consenting to assumption of the Franchise Agreements, but creditors often take a hard line in the early stages of a Chapter 11 reorganization to force the DIP to acquiesce to the creditor's preferred reorganization strategy, as is clearly the case here. However, such creditors often change their positions as the bankruptcy case develops, especially after there is an actual plan on the table. But more importantly, the Debtor is not *irrational* in having a good faith belief that it can negotiate with Popeyes to obtain its consent to assumption, certainly not to the point that acting on such belief represents a breach of fiduciary duty. It may well be the case that the Franchisee Debtors will be unable to assume the Franchise Agreements and thus be forced to sell. But that is not an immutable fact, and Debtors' refusal to see it as such does not represent inequitable conduct that justifies the extreme step of stripping the Three Debtors of control over their own cases presently.

The key legal dispute between Popeyes and the Debtors is whether applicable law excuses Popeyes from consenting to the Debtors assumption of the franchise agreements. Popeyes opines that under either the Lanham Act (15 U.S.C. §§ 1051 – 1141n) or California's Franchise Relations Act (Cal Bus. and Prof. Code §§ 20000 - 20043) Popeyes is excused from consenting to the assignment of the franchises to anyone.[1] Popeyes thus concludes that under controlling Ninth Circuit authority, *Pearlman v. Catapult Entertainment (In Re. Catapult Entertainment)*, 165 F.3d

---

[1] Popeyes has asserted throughout the case that they have presented the Debtors with potential assignees that would pass muster under Popeyes current franchise requirements.

147 9th Cir. 1999), this circuit is firmly in the "hypothetical

test" camp and under § 365, Popeyes is excused from having to

consent to the Debtors assumption of the franchises whether or

not the Debtors intend to assign the franchises to third

parties.[2]   Thus, Popeyes concludes that the plans proposed by the

Debtors are doomed to fail because they have as a critical

component the assumption of the franchise agreements.

        The Debtors oppose this notion and argue that Popeyes has

either waived the material breach involving QSR's management

after they have had knowledge of the relationship since 2019 or

have acquiesced in it.   They also argue that while *Catapult* may

place the Ninth Circuit in the "hypothetical test" camp, it

should be narrowly applied since *Catapult* requires that

"applicable law" precludes assignment before § 365(c)(1) applies.

        The problem for Popeyes here is that this motion can be

decided without this court ruling on whether the franchise

agreements can be assumed or assumed and assigned.   Popeyes has

presented the court with no controlling authority establishing

that a debtor-in-possession maintaining a similar legal position

as to the assignability of franchise agreements amounts to "gross

mismanagement."   In fact, Popeyes examples are relief from stay

motions or motions to assume agreements not removal of a debtor-

in-possession.   See *In Re Trump Entertainment Resorts, Inc.*, 526

B.R. 116, 125-126 (Bankr. D. Del. 2015) and *Moe's Franchisor, LLC

v. Taylor Investment Partners II, LLC (In Re Taylor Investments*

---

[2] Popeyes claims its late notice of California QSR's relationship to the named Debtor franchisees and Debtors' franchisee history of litigation against Popeyes and failure to meet certain franchise standards have led Popeyes to refuse to consent to the assumption or assignment of the franchises if either would involve the current principals of the Three Debtors here.

*Partners II, LLC)*, 533 B.R. 837, 842-43 (Bankr. N. D. Ga. 2015);

*In Re West Electronics, Inc.*, 852 F.2d 79 (3rd Cir. 1988);

*Wellington Vision, Inc. v. Pearl Vision, Inc. (In Re Wellington Vision, Inc.)* 364 B.R. 129 (S.D. Fla. 2007).  See also, *In Re Kazi Foods of Mich., Inc.*, 473 B.R. 887 (Bankr. E.D. Mich. 2011) (Debtor's motion to assume franchise agreements).

### C.

At the time that this motion was filed, Debtors had not yet filed a proposed plan, nor had they filed motions to assume or reject the franchise agreements. Debtors have since filed a plan in each of the Three Cases. *See* Pinnacle Doc. #177; Tyco Doc. #166 and CA QSR Doc. #172. Debtors retain the right to move for assumption or rejection at any point prior to confirmation. 11 U.S.C. § 365(d)(2). Likewise, Popeyes retains the right to object to confirmation of the proposed plan and to oppose any motions to assume after they are filed. Indeed, Popeyes retains the right to ask the court to set a deadline earlier than confirmation for Debtor to move to assume the agreement and to object to and oppose such motion when it is made. 11 U.S.C. § 365(d)(2).

In short, Popeyes has avenues for the relief it seeks that do not call for the extreme step of removing the Debtor from its status as DIP or interfering with Debtors' right to a Subchapter V designation.

### II.

Finally, the court was asked alternatively to revoke these Debtors' designation to proceed under Sub V of Chapter 11 of the

Bankruptcy Code.  Presently it is unclear whether this court even has that authority.

Popeyes presents one side of the issue by citing *In Re National Small Business Alliance*, 642 B.R. 345 (Bankr. D.D.C. 2022).  The bankruptcy court there acknowledged there was not statutory authority to revoke the debtor's election to proceed under Sub V.  Yet the court determined that since debtors could amend a traditional chapter 11 petition to include an election of the debtor to proceed under Sub V, the court can order that the debtor's petition be amended to proceed under traditional chapter 11.  *Id.* at page 348.

The contrary view that revocation at the non-debtor's urging is an unavailable remedy has been adopted by at least two bankruptcy courts.  *In Re ComedyMX, LLC*, 647 B.R. at 463-64, and *In Re Free Speech Sys. LLC*, 649 B.R. 729, 734-35 (Bankr. S.D. Tx. 2023)  These courts look to the election as solely within the province of the debtor under 11 U.S.C. § 103(i).  Thus, notwithstanding Rule 1009(a) permitting amendment of a petition on motion of a party-in-interest, the election to proceed under Sub V is the debtor's.

Additionally, as the *ComedyMX* court noted, Rule 1020 seems to establish the primacy of the debtor's election.  Rule 1020(a) says in part:

> The status of the case as a small business case or a case under Sub V of chapter 11 shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding that the debtor's statement is incorrect.

///

///

It is up to the United States Trustee or parties-in-interest to object to the designation further suggesting the eligible debtor designation is not easily changed.

This court doubts its authority to "de-designate" an eligible debtor's Sub V election upon a non-debtor's motion but this interesting issue need not be decided here. Even if this court had the authority, as mentioned above, there are insufficient facts or circumstances at this moment in the cases to either remove the debtors-in-possession with its accompanying effects or "de-designate" the Debtors election.

**CONCLUSION**

For the above reasons, this court DENIES the motions. Separate orders shall issue.

**Dated:** Aug 15, 2024                   **By the Court**

**René Lastreto II, Judge**
**United States Bankruptcy Court**

14

1

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

2

3     The Clerk of Court is instructed to send the Order/Judgment
or other court generated document transmitted herewith to the
4     parties below.  The Clerk of Court will send the Order via the
BNC or, if checked ___, via the U.S. mail.

5

6     Pinnacle Foods of California LLC
764 P. St., Ste. 105
7     Fresno, CA 93721

8     Walter R. Dahl
8757 Auburn Folsom Rd #2820
9     Granite Bay, CA 95746-2820

10    Office of the U.S. Trustee
United States Courthouse
11    2500 Tulare Street, Room 1401
Fresno, CA 93721

12
Michael Jay Berger
13    Law Office of Michael J. Berger
9454 Wilshire Blvd 6th Fl
14    Beverly Hills, CA 90212-2929

15    Keith C. Owens
Fox Rothschild LLP
16    10250 Constellation Blvd.
Ste 900
17    Los Angeles, CA 90067

18    Craig R. Tractenberg
Fox Rothschild LLP
19    2000 Market St. 20 Floor
Philadelphia, PA 19103

20
Hagop T. Bedoyan
21    Garrett R. Leatham
Garett J. Wade
22    7647 N. Fresno Street
Fresno, CA 93720

23

24

25

26

27

28