POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 24-11015-B-11 |
| | ) |
| **PINNACLE FOODS OF CALIFORNIA LLC,** | ) Docket Control No. KCO-5 |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |

**MEMORANDUM ON DEBTOR'S MOTION TO RECONSIDER
ORDER DENYING MOTION TO ASSUME FRANCHISE AGREEMENTS**

_____

Michael J. Berger, Law Offices of Michael J. Berger, Beverly Hills, CA, for Pinnacle Foods of California, LLC, Craig R. Tractenberg, FOX ROTHSCHILD LLP, for Pinnacle Foods of California LLC, Movant/Debtor.

Glenn D. Moses, VENABLE, LLP, for Popeyes Louisiana Kitchen, Inc., franchisor.

Walter R. Dahl, Subchapter V Trustee.

_____

RENÉ LASTRETO II, Bankruptcy Judge:

**INTRODUCTION**

The bankruptcy trustee or debtor-in-possession has a powerful tool to assume or assume and assign executory contracts or unexpired leases even if the contract or governing law precludes or conditions assignments. But the tool has limited usefulness in this circuit. If the identity of the non-debtor party to the contract is material, then applicable law permits the non-debtor party to withhold consent to the trustee's or

1

debtor-in-possession's assumption of the contract even though the debtor has no plans to assign the contract.

That applicable law, if interpreted as it is in this circuit, can be a roadblock on a formidable path for a debtor who wants to reorganize.

A quick service restaurant franchisee here reached that roadblock and chose to crash through by both disputing its existence or claiming it allowed passage anyway. But the wall held when this court denied its motion to assume franchise contracts. Rather than bypassing the roadblock, the franchisee now tries to smash it once again, by asking the court to reconsider its prior ruling. But there is no basis to change the ruling since it is not legal error for a court to apply the controlling law. The court DENIES the motion for reconsideration.

**I.**

**A.**

Pinnacle Foods of California, LLC ("Pinnacle") is a franchisee of Popeyes Louisiana Kitchens ("PLK"). Pinnacle operates six Popeyes fast food restaurants - five in Fresno, California and one in Turlock, California. Separate franchise agreements between Pinnacle and PLK for the various restaurants were entered into. Doc. #228.

Beset by a number of problems faced by the quick service restaurant industry in California, Pinnacle filed a voluntary Chapter 11 proceeding in April 2024 and elected to proceed under Subchapter V.

Pinnacle has proposed a plan, but it has not been pursued. A significant issue about the relationship between Pinnacle and PLK needs resolution. The issue: Whether under 11 U.S.C. § 365 of the Bankruptcy Code, Pinnacle can assume PLK's franchise agreements without PLK's consent.[1] In order to resolve the issue, in September 2024, Pinnacle filed a motion to assume the franchise agreements (KCO-4).

**B.**

Pinnacle proposed to assume PLK's franchise agreements and provide for a prompt cure of any pre-petition defaults. Pinnacle claimed that its obligation to provide adequate assurance of future performance was based on its ability to reorganize.

PLK opposed. From the beginning of the case, PLK has maintained that it would not consent to Pinnacle assuming the franchise agreements. Doc. #245. PLK relied on § 365(c)(1) which, as interpreted by the Ninth Circuit in *Perlman v. Catapult Entertainment, Inc. (In Re Catapult Entertainment)* ("*Catapult*"), excuses PLK from accepting performance from or rendering performance to a hypothetical third party. *See* 165 F.3d 747 (9th Cir. 1999).

PLK goes on to contend that Pinnacle cannot assign franchise agreements without PLK's consent due to provisions of the Lanham Act (15 U.S.C. §§ 1051 *et seq.*) and the California Franchise Relations Act ("the CFRA") (Cal. Bus. & Prof. Code §§ 20000 *et*

---

[1] Unless otherwise indicated, all references to code sections will be to the United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*). "Civ. Rule" will be references to the Federal Rules of Civil Procedures. Citations to "Rule" shall be to the Federal Rules of Bankruptcy Procedure.

*seq.*), and so Pinnacle is also barred from assuming the franchise agreements. *Id.* This is because the Ninth Circuit, along with the majority of circuit courts that have taken up the issue, apply the "hypothetical test" to determine if a contract can be assumed or assigned under § 365(c)(1).

PLK also argued that Pinnacle has committed uncurable non-monetary defaults under the franchise agreements. Pinnacle disputed that there is any non-monetary default at all and contends that it does not need to cure all monetary defaults.

In reply to PLK's opposition, Pinnacle relied on arguments that the CFRA contains provisions which defeat PLK's arguments under the hypothetical test. Pinnacle also argued that it is in the process of curing the various monetary defaults. Pinnacle did not substantially discuss the application of the Lanham Act's trademark protections.

The court held a hearing on the motion on October 8, 2024. Two days later, it issued a 20-page memorandum on the motion and an order denying the Debtor's motion to assume the franchise agreements. Docs. ##275 – 276.

In its decision, the court began by discussing § 365(c)(1) and the two different theories of application of that section: the "hypothetical test" and the "actual test." Under the "hypothetical test," if the debtor merely wishes to assume an executory contract or an unexpired lease and not assign its contract rights to a third party, the counter-party may still withhold its consent and block assumption if there is a hypothetical third party to whom the debtor might assign its contract rights but as to whom the counter-party would be excused

from performing for under applicable law. *City of Jamestown v. James Cable Partners, L.P. (In re James Cable Partners)*, 27 F.3d 534, 537 (11th Cir. 1994)

Under the "actual test," the counter-party would only be able to block assumption if there were an actual third party from whom the counter-party would be forced to accept performance other than the debtor with whom the counter-party had contracted, and the counter-party would be excused from performing for under applicable law. *Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489, 493 (1st Cir. 1997). The court noted in its decision that the "applicable law" means any law applicable to the contract other than bankruptcy law. *In Re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011).

The court then applied the *Catapult* hypothetical test and noted that both the Lanham Act and the provisions of CFRA constitute "applicable law" that would excuse PLK from accepting performance from or giving performance to a "hypothetical third-party."

The Lanham Act provides remedies for misuse of the trademark such as the one owned by PLK. The court noted the authorities under the Lanham Act giving the trademark holder the right to assign a trademark but also giving a holder the right and duty to control the quality of goods sold under the mark. 15 U.S.C. § 1060; *N.C.P. Mktg. Group v. Blanks (In Re N.C.P. Mktg. Group)*, 337 B.R. 230, 235-37 (D.Nev. 2005), *aff'd N.C.P. Mktg. Group, Inc. v. Blanks (In Re N.C.P. Mktg. Group, Inc.)* 279 Fed. Appx. 561 (9th Cir. 2008), *cert. den.* 556 U.S. 1145 (2009).

///

As to the CFRA, the court considered Pinnacle's argument that the CFRA is the only "applicable law" that matters and it encourages assignment. However, the court pointed to provisions of the CFRA giving franchisors authority to withhold consent to franchise transfers if the proposed transferee does not meet franchisor's standards for new or renewing franchisees. Cal. Bus. & Prof. Code § 20028.

The court disagreed with Pinnacle's interpretation that CFRA compels PLK to consent. The "hypothetical test" as espoused in *Catapult* looks to whether the applicable law excuses PLK's performance to a hypothetical transferee. The answer is it does. If a hypothetical transferee fails to meet PLK's standards, PLK is excused from performing. That is the only question that the Ninth Circuit requires to be asked. The identity of the transferee is critical in the franchise relationship.

Pinnacle did argue that there are cases such as *In Re Van Ness Auto Plaza, Inc.* where a franchisor had to justify its lack of consent as reasonable. 120 B.R. 545 (Bankr. N.D. Cal. 1990). But the court in its earlier decision distinguished those cases on several grounds, not the least of which is the fact that the statute involved in the auto franchise cases, Cal. Veh. Code § 11713.3(e), has entirely different provisions than the Lanham Act or the CFRA. The court ultimately ruled that the franchise agreements could not be assumed by Pinnacle absent PLK's consent.

Fourteen days after entry of the order, this motion for reconsideration was filed.

///

///

**C.**

In the motion to reconsider, Pinnacle reargues two primary contentions the court dealt with in the original Decision. First, Pinnacle argues the trademark protections of the Lanham Act do not apply to franchises that are to be assumed and assigned in bankruptcy in California since the exclusive "applicable law" under § 365(c)(1) is the CFRA. Second, Pinnacle urges that, though *Catapult* is binding authority on this court, application of CFRA here requires this court to determine the reasonableness of PLK's decision not to consent to a transfer in this case.

PLK urges that, as a matter of law, Pinnacle's rehash of the previous arguments made in the assumption motion does not support reconsideration under either Civ. Rule 59(e)(Rule 9023) or Civ. Rule 60(b)(Rule 9024). Also, PLK contends that under *Catapult*, as applied by this court, either the Lanham Act or the CFRA would excuse PLK from accepting performance from a non-debtor third party. Thus, under the "hypothetical test," PLK prevails since it can be excused under either law from accepting performance from or performing under the franchise agreements under PLK's existing standards. Further, PLK urges that nothing in § 365(c) or the Bankruptcy Code limits the "applicable law" inquiry to just one law. The Lanham Act protects trademarks nationwide and provides remedies for unauthorized use of a mark. PLK argues that the Lanham Act and the CFRA can and do co-exist.

In reply, Pinnacle argues the Lanham Act and CFRA are inconsistent and that the court in its decision gave the franchisor veto power in every case where a trademark is

involved.  Pinnacle claims the court erred by not asking why the
identity of a "hypothetical transferee" is essential to the
contract if the law excuses assignment.


**D.**

Jurisdiction is conferred upon this court under 28 U.S.C.
§ 1334(b) and 28 U.S.C. § 157(a).  This is a proceeding that this
court can hear and finally determine.  28 U.S.C. § 157(b)(2)(A),
(M), and (O).


**II**

**A.**

Pinnacle rests its motion on Civ. Rule 60(b) arguing that
this court's ruling denying the motion to assume was a mistake of
law.  *See Kemp v. United States*, 596 U.S. 528, 533-34 (2022)
("[A]'mistake' under Rule 60(b)(1) includes a judge's mistake of
law.")  Nevertheless, "re-litigation of the legal or factual
claims underlying the original judgment is not permitted in a
60(b) motion or an appeal therefrom." *Agostini v. Felton*, 521
U.S.C. 203, 257 (1997).  Civ. Rule 60(b) provides for
extraordinary relief and may be invoked only upon a showing of
exceptional circumstances. *Engleson v. Burlington N.R. Co.*, 972
F.2d 1038, 1044 (9th Cir. 1992).  A party must show the court
committed a specific error. *Straw v. Bowen*, 866 F.23 1167, 1172
(9th Cir. 1989).  A ruling on this motion is addressed to the
sound discretion of the court. *Casey v. Albertson's Inc.*, 362
F.3d 1254, 1257 (9th Cir. 2004).
///

In a footnote, Pinnacle also claims this motion should be considered a motion to alter or amend a judgment under Civ. Rule 59(e) (Rule 9023). A motion for reconsideration should not be granted absent highly unusual circumstances. *Beaver v. Tarsadia Hotels*, 29 F.Supp.3d 1294, 1301-2 (S.D. Cal. 2014) *aff'd* 816 F.3d 1170 (9th Cir. 2016)(citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). These motions should not be used to ask the court to re-think what the court has already thought through merely because the party disagrees with the court's decision. *Id.; Collins v. D. R. Horton, Inc.*, 252 F.Supp.2d 936, 938 (D. Ariz. 2003)(citing *U.S. v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D. Ariz. 1998)).

Although Civ. Rule 59(e) permits a bankruptcy court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "Indeed, a motion for reconsideration should not be granted absent highly unusual circumstances, unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.´ *Id.*

Under either Civ. Rule 60(b)(1) (Rule 9024) or Civ. Rule 59(e)(Rule 9023), no mistake of law or "clear error" of law was committed here. As set forth below, Pinnacle's merely rehashes the same arguments that have already been dealt with by the court, and there is nothing in support of Pinnacle's motion establishing that the court's previous ruling was erroneous under controlling Ninth Circuit law.

**B.**

The Lanham Act (15 U.S.C. § 1051 *et seq.*) does not conflict with the CFRA.  The court did not err in holding that, under the hypothetical test, the Lanham Act was an independent basis for PLK to be excused from accepting performance from or rendering performance to a hypothetical third-party.  Pinnacle could only assume the franchise agreements with PLK's consent.

The general authority of a debtor-in-possession to assume and/or assign an executory contract lies in § 365.  The general rule is that the debtor in possession may assign a contract or lease upon assumption and the establishment of adequate assurance of future performance notwithstanding a provision in the executory contract or an applicable law that prohibits, restricts, or conditions the assignment § 365(f).

An exception to that general rule is the essence of the legal dispute here.  Section 365(c)(1) provides:

> (c) the trustee [or debtor-in-possession] may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties if –
>
> (1)
>
> (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor-in-possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment…

///

///

10

The application of this subsection has divided the courts
into two camps: the "hypothetical test" camp and the "actual
test" camp.

The "hypothetical test" approaches the assumption question
by strictly reading the limitations on a trustee or debtor-in-
possession's power to assume under § 365(c)(1). 3 COLLIER ON
BANKRUPTCY ¶ 365.07 (16th Edition). If PLK would be excused from
accepting performance from or rendering performance to an entity
other than Pinnacle under applicable law, then Pinnacle as
debtor-in-possession may not assume the contract even though
Pinnacle would be the one performing under a franchise agreement.
That approach was adopted by the Ninth Circuit in *Catapult*.

The "actual test" differs in that the non-debtor party is
excused in accepting performance from or rendering performance to
an entity other than the debtor-in-possession only if the debtor-
in-possession wished to assume and assign the franchise agreement
to another entity that actually existed. This approach is
adopted in the minority of circuits. See, *Summit Inv. & Dev.
Corp. v. Leroux (In Re Leroux)*, 69 F.3d 608 (1st Cir. 1995);
*Bonneville Power Admin. v. Mirant Corp. (In Re Mirant Corp.)*, 440
F.3d 238 (5th Cir. 2006).

Thus, in the majority of circuits, a debtor may only assume
an executory contract if the debtor has the hypothetical
authority to assign the contract (the "hypothetical test"), while
other circuits permit a debtor to assume an executory contract if
the debtor does not intend to assign it (the "actual test").

In *Catapult*, Perlman, a licensor, granted several non-
exclusive patent licenses to exploit technologies including

patent applications to Catapult, which was in the business of creating an online gaming network.  After going through a reverse triangular merger and bankruptcy reorganization, Catapult sought to assume the licenses.  The bankruptcy court granted the assumption motion and confirmed the plan.  The district court affirmed, and Perlman appealed to the Ninth Circuit.

The court of appeals analyzed both the "hypothetical test" and the "actual test" and acknowledged the split among the circuits.  The *Catapult* court wrestled with the apparent conflict between § 365(f) and (c)(1).  It resolved the conflict by noting that "only if the law prohibits assignment on the rationale that the identity of the contracting party is <u>material</u> to the agreement will subsection (c)(1) rescue it."  *Catapult*, 165 F.3d at 752.  The *Catapult* court held:

> Accordingly, we hold that where applicable non-bankruptcy law makes an executory contract non-assignable because the identity of a non-debtor party is material, a debtor-in-possession may not assume the contract absent consent of the non-debtor party.

*Id.* at 754.

In the decision on Pinnacle's motion to assume the contracts, the court examined the ability of the trademark holder to control the quality of goods sold under the mark.  15 U.S.C. § 1060.  The court also cited numerous authorities including *N.C.P. Mktg. Grp. v. Blanks (In re N.C.P. Mktg. Grp.)*, 337 B.R. 230 (D. Nev. 2005), aff'd 279 Fed. Appx. 561 (9th Cir. 2008), cert. denied, 556 U.S. 1145 (2009) and *Miller v. Glenn Miller Production*, 318 F.Supp.2d 923, 928 (C.D. Cal. 2004) and *In Re XMH Corp.*, 647 F.3d 690, 695 (7th Cir., 2011)("[T]he universal rule is that trademark licenses are not assignable in the absence of a

clause in the contract expressly authorizing the assignment.")
*Accord* J. Thomas McCarthy, 4 MCCARTHY ON TRADEMARKS AND UNFAIR
COMPETITION, § 1422 (4th Edition 2005) ("Since the licensor-
trademark owner has the duty to control the quality of goods sold
under its mark, it must have the right to pass upon the abilities
of a new potential licensees.")  Other courts agree.  *See In*
*Trump Entertainment Resorts*, 526 B.R. 116, 124, 127 (Bankr. D.
Del. 2015); *In Re AJRANC Ins. Agency, Inc.*, 8:20-bk-06493-CED;
2021 Bankr. LEXIS 1772 (Bankr. M. D. Fla., July 2, 2021).

Pinnacle argues that the Lanham Act is not applicable law
and instead urges that the "California amendments" (Doc. #230
(Exh. G)) attached to the franchise agreements applies California
law with respect to transfers.  Pinnacle thus argues that the
CFRA is the controlling law notwithstanding federal trademark
protection.

The "California Amendments" do reference the CFRA regarding
transfers, but the contract amendment does not supersede federal
law under the Lanham Act.[2]  The franchise agreements also state
that Georgia law will control even though the "California
Amendments" note that Georgia law may not be enforceable.  (Doc.
#130 Exh. G.)

Pinnacle's argument assumes the Lanham Act eliminates
transfer rights.  It does not.  Trademarks are valuable property
rights, and the owner controls the right to control the quality
of goods sold with the mark.  An owner of a mark controls the
transfer because the owner has an interest in the use of the mark

---

[2] The court noted in its decision that the Lanham Act does not preempt all
franchise law (Doc. #275 fn. 4).

and the identity of the mark attached to a product or service.
An owner has a right to be sure they are consistent. *N.C.P.*
*Mktg. Grp.* 337 B.R. at 236 (affirming a bankruptcy court order
compelling a rejection of a non-exclusive trademark license).
The *N.C.P.* court approved PLK's rationale here concluding:

> Because the owner of the trademark has an interest in
> the party to whom the trademark is assigned so that it
> can maintain the goodwill, quality, and value of its
> products and thereby its trademark, trademark rights are
> personal to the assignee and not freely assignable to a
> third party. (Cits. omitted)

*Id*.

Pinnacle cites *Int'l Franchise Ass'n v. City of Seattle*,
which held that a proposed ordinance classifying certain
franchisees as large employers and subject to a higher minimum
wage did not conflict with the Lanham Act since the act does not
preempt such an ordinance. 803 F.3d 389, 410 (9th Cir. 2015)
*cert. den.*, 578 U.S. 959 (2016).

The Lanham Act protects consumers and owners of trademarks.
Pinnacle argues that the CFRA preempts the Lanham Act application
in the context of an exception to the general power to assume
executory contracts under the Bankruptcy Code.  But the issue
here is not whether the Lanham Act preempts CFRA and thus gives
"veto power" to PLK.  The issue is whether PLK as trademark owner
must consent to transfer of the mark to a hypothetical third
party.  And under trademark law, it must, despite Pinnacle's
efforts to establish a false dichotomy.

In *Int'l Franchise Ass'n*, the Ninth Circuit held the Lanham
Act was inapplicable to the issue litigated there:  Application
of an ordinance affecting the minimum wage to be paid certain

employers.  *Id.* at 409.  Pinnacle argues here that the Lanham Act
does conflict with the CFRA so *Int'l Franchise Ass'n* is
inapposite.

Pinnacle next claims it "defies logic" that the terms of the
California Amendments to the franchise agreements incorporate the
CFRA and yet the Lanham Act would still apply.

To the contrary, Pinnacle's premises are flawed.  The first
premise is that only one set of laws could apply here.  The
Lanham Act does not preempt all franchise laws, but that does not
mean the Lanham Act and CFRA cannot coexist.  Indeed, PLK's
contracts incorporate Georgia Law and CFRA.  At least two "laws"
can apply to the contracts here except, perhaps, where the laws
conflict and are irreconcilable.  Despite Pinnacle's efforts, the
Lanham Act and CFRA are not in irreconcilable conflict here.

The second faulty premise is that CFRA's franchise transfer
provisions fully supplant the Lanham Act.  As has been argued and
decided, even under CFRA, PLK can hypothetically be excused from
accepting or rendering performance to a proposed assignee if they
do not meet PLK's standards.  There is no inconsistency as
applied here.

Pinnacle next encourages the court to engage in a conflict
of laws analysis in the application of CFRA and the Lanham Act.
Pinnacle cites a California Appeal Court decision *1-800-Got Junk?*
*LLC v. Superior Court*, 189 Cal. App. 4th 500 (2010)("*Got Junk*").
Pinnacle appears to argue that, since the CFRA contains more
restrictive provisions relating to the consent of a franchisor to
an assignment of the franchise contract than under the Lanham
Act, conflict of laws principles support the primacy of CFRA over

the Lanham Act here.  The argument is unsupported.  In *Got Junk*,

the issues were whether there was a reasonable basis for a

contractual choice of law provision in a franchise contract and

whether the California public policy precluded application of

contractual choice of law.  In *Got Junk*, a franchisor terminated

the franchise of a southern California franchisee for failure to

pay the franchisor for certain jobs performed by the franchisee.

After an analysis of Washington law and the CFRA, the court in

*Got Junk* held that Washington law provided greater franchisee

protection than the CFRA.  *Id.* at 512.

> The California Franchise Relations Act at Business & Professions Code § 20000 *et seq.* serves to protect California franchisees, typically small business owners, and entrepreneurs from abuses by franchisors in connection with non-renewal and termination of franchises.

*Got Junk* at 515 (cites omitted).

The case here does not implicate either of those policies.

PLK has not terminated the franchise nor failed to renew the

franchise.  Rather, PLK is refusing to consent to assumption and

assignment in the context of a reorganization proceeding

implicating bankruptcy law as interpreted and applied in this

circuit.  Nothing in *Got Junk* supports a contention that the

legislative intention of the CFRA is offended by restrictions on

assumption and assignment of franchise agreements in a bankruptcy

case.  In fact, nothing in *Got Junk* analyzes the franchisor's

consent to transfer at all.

Pinnacle argues that CFRA is the only applicable law for

purposes of § 365(c).  Pinnacle goes on to divine that the

leverage "imbalance" this court's decision causes will deter

bankruptcy filings due to a risk of franchisor nonconsent.  That, unfortunately for debtors, is simply a part of the calculus and risk assessment in franchisees proceeding in bankruptcy cases in this circuit and other "hypothetical test" jurisdictions.  The risk is not unlike that taken by debtors amid mass tort exposure in the Ninth Circuit, which has held for thirty years that third party releases are unavailable under a confirmed plan under § 524(e).  *Resorts Int'l., Inc. v. Lowenschuss (In Re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995), c*ert. den.* 517 U.S. 1243 (1996).

In short, both the Lanham Act and CFRA can coexist. Pinnacle has argued that CFRA should apply to a § 365(c)(1) analysis to the exclusion of the Lanham Act.  This is a "hypothetical test" jurisdiction.  The court is not faced with a proposed sale in this case in either the underlying motion to assume the franchises or this motion for reconsideration.  Rather, the question is whether, under the "hypothetical test," does the Lanham Act excuse PLK from accepting performance from or rendering performance to another party other than the debtor or debtor-in-possession.  The authorities establish the importance to a trademark owner in controlling the use of the mark.  That is true even in a § 365(c)(1) analysis.  Under *Catapult*, Pinnacle may not assume without PLK's consent.

### C.

Even if Pinnacle was correct concerning the primacy of CFRA over the Lanham Act – and it is not – PLK is still excused from ///

accepting performance from or rendering performance to a third party without consent even under the CFRA.

The provisions of the CFRA itself authorize PLK to refuse to consent under the "hypothetical test" since it could refuse to consent to an assignment or transfer to a third party that does not meet PLK's franchisee standards.

Cal. Bus. & Prof. Code § 20028 governs the transfer or sale of a franchise.  Subdivision (a) provides:

> It is unlawful for a franchisor to prevent a franchisee from selling or transferring a franchise, all or substantially all of the assets of the franchise business, or a controlling or noncontrolling interest in the franchise business, to another person **provided that the person is qualified under the franchisor's then – existing standards for the approval of new or new or renewing franchisees, the standards to be made available to the franchisee…and to be consistently applied to similarly situated franchisees operating within the franchise brand and the franchisee and the buyer, transferee or assignee comply with the transfer conditions specified in the franchise agreement.**

(emphasis added).

So, even under CFRA, PLK can refuse to consent to a transfer if the prospective franchisee does not meet its standards and the franchisee and the buyer fail to comply with the transfer conditions specified in the franchise agreement.  Therefore, "hypothetically," PLK has a right to refuse to consent if the there is a hypothetical prospective franchisee that does not meet its standards.  In other words, the "applicable law," as urged by Pinnacle establishes that PLK can be excused from accepting performance from or rendering performance to a third party.

Subdivision (b) of Cal. Bus. & Prof. Code § 20028 establishes the need for a franchisor's consent as a condition to a transfer:

> Notwithstanding Subdivision (a), a franchisee shall not have the right to sell, transfer, or assign the franchise, all or substantially all of the assets of the franchise business, or a controlling or noncontrolling interest in the franchise business, **without the written consent of the franchisor, except that the consent shall not be withheld unless the buyer, transferee, or assignee does not meet the standards for new or renewing franchisees described in subdivision (a) or the franchisee and the buyer, transferee or assignee do not comply with the transfer conditions specified in the franchise agreement.**

(emphasis added).

Even under the CFRA, written consent from the franchisor is required, but the franchisor is not to withhold consent unless its standards are not met or the parties to the transfer do not comply with conditions specified in the franchise agreement. *Id.* Thus, "applicable law" excuses a franchisor who withholds consent if its standards are not met or the transfer conditions specified in the franchise agreement are not met.

These issues were discussed and analyzed in the previous decision.

Cal. Bus. & Prof. Code § 20029(b) provides a time limit within which the franchisor, after receipt of all necessary documentation, is to notify the franchisee of an approval or disapproval of a proposed sale, or assignment, or transfer. Unless it is disapproved, the proposed sale, assignment, or transfer is deemed approved. But under subdivision (2) of Cal. Bus. & Prof. § 20029(b) it is provided:

> In any action in which the franchisor's disapproval of a sale, assignment, or transfer pursuant to this subdivision is an issue, the reasonableness of the franchisor's decision shall be a question of fact requiring consideration of all existing circumstances.

///

Pinnacle uses this provision to argue that a "reasonableness" inquiry by the court is necessary to determine whether PLK's refusal to consent is justified under CFRA.  That argument is a "red herring."  There is no sale, assignment, or transfer before the court.  All that is before the court is the question of whether "applicable law" permits PLK to refuse to consent to a third party being assigned the franchise agreement.  CFRA permits such refusal.  That is the only inquiry that is relevant.

Undaunted, Pinnacle argues that under a First Circuit decision, *In Re Pioneer Ford Sales*, 729 F.2d 27 (1st Cir. 1984), that a 'reasonableness inquiry" is necessary when applying a consistent state law even though that law does provide for consent of the franchisor.  This case is inapplicable.

First, the court is not bound by nor persuaded by *Pioneer Ford Sales* since it is a decision from a circuit that has since adopted the "actual test."  *Institut Pasteur*, 104 F.3d at 493.

Second, Pinnacle's argument asks the court to apply the "actual test" which *Catapult* rejected.  Even before *Catapult* was decided, the Ninth Circuit noted the split of circuit authority on the interplay between §§ 365(c) and 365(f). *See Everex Sys. v. Cadtrak Corp. (In Re CFLC, Inc.*), 89 F.3d 673, 676-77 (9th Cir., 1996) In *Everex*, the circuit held under either circuit's interpretation, a nonexclusive patent license was personal and nondelegable.

Third, one cannot ignore that in both *Pioneer Ford* and *In Re Van Ness Auto Plaza*, 120 B.R. 545 (Bankr. N.D. Cal. 1990), also cited by Pinnacle, the courts either held the auto manufacturer ///

was reasonable in denying the assumption or affirmed a lower
court's decision that it was.

Pinnacle also contends the court should have made factual
findings that PLK is being reasonable in withholding consent.
That assumes Pinnacle is correct that an "actual test" objective
reasonableness analysis should have been applied.  That is not
the law in the Ninth Circuit, notwithstanding Pinnacle's
entreaties to the contrary.

The "motor vehicle cases" Pinnacle repeatedly references
were not decided under CFRA.  In California, as cited in *Van Ness
Auto Plaza*, 120 B.R. at 547 the "applicable law" was California
Vehicle Code § 11713.3(e) which in 1990 provided in part:

> It is unlawful…for any manufacturer…to do any of the
> following:
>
>> (e)
>>
>> To prevent, or attempt to prevent, a dealer
>> from receiving fair and reasonable
>> compensation for the value of the franchised
>> business.  There shall be no transfer or
>> assignment of the dealer's franchise without
>> the consent of the manufacturer or
>> distributor, which consent shall not be
>> unreasonably withheld.

The applicable law itself provided for the application of
reasonable consent.  In fact, in comparing cases involving
landlords withholding of consent as to lease assignments, the *Van
Ness Auto Plaza* court compared the lease scenario to a franchise:

> First, it is more difficult to determine whether an
> automobile dealer will be a suitable franchisee than it
> is to determine whether a lessee will perform under a
> lease.  A lessee's major contractual duty is to pay rent
> timely.  A franchisee's duties are much more complex.
> Second, a franchise agreement involves a manufacturer and
> dealer in a much closer business relationship than
> commonly exists between a lessor and lessee.  Thus, the
> courts must be somewhat cautious in requiring the

21

manufacturer to enter into such relationship involuntarily.

120 B.R. at 548-549.

In partial support of its motion, Pinnacle cites another "car dealer case." *Ford Motor Company v. Claremont Acquisition Corp. (In Re Claremont Acquisition Corp.)*, 186 B.R. 977 (C.D. Cal. 1995) *aff'd Worthington v. GMC (In Re Claremont Acquisition Corp.)*, 113 F.3d 1029 (9th Cir. 1997), superseded by statute on other grounds as stated in *In Re Hathaway*, 401 B.R. 477, 484-5 (Bankr. E.D. Wash. 2009). However, *Claremont Acquisition Corp.* is also unpersuasive.

First, *Claremont Acquisition Corp.* and *Van Ness Auto Plaza* predate *Catapult* so they are largely irrelevant.

Second, there is no discussion or consideration of the CFRA in *Claremont Acquisition Corp.* It only analyzed the application of Cal. Veh. Code § 11713.3(e).

Third, in *Claremont Acquisition Corp.,* the bankruptcy court compelled two auto manufacturers to accept involuntarily the assignment of the debtor's franchise agreements to third parties. On appeal, the district court applied Vehicle Code § 11713.3(e) and § 365(c)(1) and found substantial evidence including low customer ratings significant enough not to compel assignment as to one dealer. Also, a significant issue in *Claremont Acquisition Corp.* is whether the debtor dealerships "went dark" prepetition, which was a non-curable default. These issues are not before the court on this motion.

By the same token, Pinnacle's protestation that the court's decision "eviscerates" Cal. Bus. & Prof. Code § 20029(b)(2)

22

(quoted above) is hyperbole.  That provision cannot be viewed in a vacuum.  Cal. Bus. & Prof. Codes § 20028(a) and (b) provide two important conditions on transfers.  First the proposed assignee must be qualified under the franchisors then existing standards for the approval of new or renewing franchisees and franchisee and the proposed successor must comply with transfer restrictions specified in the transfer agreement.

Notwithstanding those conditions, no transfer can occur without the written consent of franchisor, except that consent cannot be withheld unless the buyer, transferee, or assignee does not meet the standards of new or renewing franchisees or does not comply with the transfer conditions in the franchise agreement. *Id.*

Applicable law excuses PLK from consenting to a transfer or assignment of a franchise if the proposed transferee or assignee does not meet the standards for new or renewing franchises under CFRA.  Under § 365(c)(1) as applied by the Ninth Circuit, the contingency precludes assumption *or* assignment, not assumption *and* assignment.  *Catapult,* 165 F.3d at 752-754.  Whether actual facts regarding qualification exist or not, the Ninth Circuit focuses on materiality of the identity of the non-debtor party.  PLK's standards are material to the franchisor/franchisee relationship for obvious reasons.  Thus, PLK's consent is required under the CFRA and here.

Nevertheless, Pinnacle maintains that the court's reading of *Catapult* misses a nuance.  The *Catapult* court evidently did not mean what it said when it held the plain reading of § 365(c)(1) compelled the result in this case.  Instead, Pinnacle maintains

that what *Catapult* really stands for is the requirement that the "reasonableness" of PLK's lack of consent must be examined notwithstanding the *Catapult* holding.

Supporting this contention, Pinnacle relies on a case cited by the Ninth Circuit in *Catapult, In Re Antonelli*, 148 B.R. 443, 450 (D. Md. 1992) *Aff'd without opinion*, 4 F.3d 984 (4th Cir. 1993). This reliance is unavailing for three reasons.

First, it should be noted that the Fourth Circuit has adopted the "hypothetical test" since *Antonelli*. *In Re Sunterra*, 361 F.3d 257 (4th Cir. 2004). In fact, *Sunterra* cited *Antonelli* for the proposition that anti-assignment laws predicated *on the materiality of the identity of the contracting party* activate § 365(c)(1)'s exception to the § 365(f) general directive to ignore anti-assignment provisions and applicable law. *Sunterra*, 361 F.3d at 267. The applicable law here makes the identity of the franchisee material. So, assumption or assignment requires PLK's consent.

Second, this court discussed the *Antonelli* decision in its memorandum decision. *See* Doc. #275, pp. 16-18. Pinnacle simply repeats arguments already discussed and analyzed before.

Third, Pinnacle completely ignores the *Catapult* court's discussion of *Antonelli* and also *Rieser v. The Dayton Country Club Company, (In Re Magness)* 972 F.2d 689, 695 (6th Cir. 1992). In *Magness*, the Sixth Circuit affirmed the denial of the trustee's motion to assume and assign a golf club membership in which the club had a detailed process for granting a finite number of golf memberships. The *Magness* court held the interests of the other club members and the personal relationship between

members precluded assumption.  So, both *Antonelli* and *Magness* are summed up by the Ninth Circuit's holding in *Catapult* that § 365(c)(1)'s reference to "applicable law" refers to a law that prohibits assignment when "identity of the contracting party is material to the agreement." *Catapult*, 165 F.3d at 752.  That is when assignment is precluded.  Nothing in the Lanham Act or CFRA requires a franchisor to be blinkered when faced with a prospective new party to their franchise agreement.  Section 365(c)(1) applies to excuse PLK from performing without their consent if a new party is unqualified.

Though perhaps superficially appealing, Pinnacle's arguments amount to a challenge to the policy the "hypothetical test" invokes.  But the *Catapult* court has the answer: "…Congress is the policy maker, not the courts." *Id.* at page 754.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

1

**CONCLUSION**

2          For the foregoing reasons, the court discerns no clear error

3    of law or highly unusual circumstance justifying reconsideration

4    of its ruling denying Pinnacle's motion to assume franchise

5    agreements under Civ. Rule 59(e)(Rule 9023).  Nor, upon

6    reconsideration, is there a mistake of law under Civ. Rule

7    60(b)(1)(Rule 9024).  Thus, Pinnacle's motion for reconsideration

8    is **DENIED.**

9          A separate order will issue.[3]

10

11   **Dated:** Dec 19, 2024                    **By the Court**

12

13                                             *René Lastreto II*

14                                             **René Lastreto II, Judge**
                                              **United States Bankruptcy Court**

15

16

17

18

19

20

21

22

23

24

25

26

27   ─────────────────
     [3] The foregoing are the court's findings of fact and conclusions of law under
     Civ. Rule 52 (Rule 7052).  Any finding of fact that is construed as a
     conclusion of law is adopted as such.  Any conclusion of law construed as a
28   finding of fact is adopted as such.

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

        The Clerk of Court is instructed to send the Order/Judgment
or other court generated document transmitted herewith to the
parties below.  The Clerk of Court will send the Order via the
BNC or, if checked ___, via the U.S. mail.

Pinnacle Foods of California LLC
764 P. St., Ste. 105
Fresno, CA 93721

Walter R. Dahl
8757 Auburn Folsom Rd #2820
Granite Bay, CA 95746-2820

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno, CA 93721

Michael Jay Berger
Law Office of Michael J. Berger
9454 Wilshire Blvd 6th Fl
Beverly Hills, CA 90212-2929

Keith C. Owens
Fox Rothschild LLP
10250 Constellation Blvd.
Ste 900
Los Angeles, CA 90067

Craig R. Tractenberg
Fox Rothschild LLP
2000 Market St. 20 Floor
Philadelphia, PA 19103

Glenn Moses
Venable LLP
801 Brickell Avenue, Suite 1500
Miami FL 33131